J^MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
Relator seeks review of a motion to recall an improperly issued order. The motion was filed in response to Judge King’s ex proprio motu order that the case would remain in his division even though he was rotating out of a domestic relations section.
FACTS
This case involves a divorce and contested custody of four children ages sixteen to seven. Trial on custody commenced on 18 April 2001. The court took two days of testimony from one witness, Dr. Van Beyer, the court appointed mental health expert, and then recessed. On 27 April 2001, the court issued an order scheduling the trial to resume on 20 June 2001.[1] On 10 May 2001, the court issued an order that the case was to remain in Division “M.”[2] On 6 July 2001 relator filed” a “Motion to Recall Improperly Issued Order” challenging the order that the case remain in Division “M.” The trial court denied the motion on 10 September 2001 and stayed all proceedings pending resolution of relator’s application to this court.
DISCUSSION
Relator contends that the order keeping the case in Division “M” contravenes Civil District Court Rule 6, Section 3 and La. R.S. 13:1138 and should be vacated.
|2Rule 6 provides for the allotment of cases and Section 3 provides as follows:
To avoid confusion when divisions rotate in and out of the domestic relations section, cases shall be allotted to sections rather than to the divisions of court. Upon filing the first pleading, a case shall be randomly allotted either to section 5 through section 16 (non domestic cases) or to a domestic relations section. When a division ceases to be a domestic relations section, it shall be assigned those cases previously assigned to that division succeeding to the domestic relations section. The Clerk of Court shall publish conspicuously in the Clerk’s Office the assignment of case sections to particular divisions of the court. The division shall handle the section cases assigned to it until a change in the assignment of cases in accordance with this Rule.
Essentially, Section 3 provides for the assumption of a non domestic docket by a division rotating out of a domestic section. By its own terms Section 3 does not specifically provide for the assumption of the domestic relations cases by the division of court rotating into the domestic relations section; however, this corollary appears implicit. Furthermore, the issue could be addressed from the opposite perspective, i.e., not whether the court’s action contravened Section 3, but whether the court had the initial authority to remove a case from the Domestic Relations Section. From that perspective, it does not appear the court had the authority to remove the case. The local rules make no provision for such a transfer.
*63 La. R.S. 13:1138 provides in pertinent part:
§ 1138. Domestic Relations Section
A. The judges of the Civil District Court for the parish of Orleans who are in office on July 1, 1979 shall create the Domestic Relations Section of that court, by rule of court adopted on or before December 1, 1979, by the judges sitting en banc. The rule shall designate not less than two incumbent judges who shall be assigned to the Domestic Relations Section in accordance with the rules of the Civil District Court for the parish of Orleans. The Domestic Relations [.¡¡Section shall be assigned all cases involving domestic relations problems, including the following:
(1) Actions for divorce, annulment of marriage, establishment or disavowal of paternity of children, alimony, support of children, custody by habeas corpus or otherwise, visitation rights, and all matters incidental to any of the foregoing proceedings.
As relator notes, the operative language of the statute is mandatory. “The Domestic Relations Section shall be assigned all cases involving domestic relations problems.” Currently, this domestic relations case is not assigned to a Domestic Relations Section in apparent contravention of the statute. Furthermore, in State v. Belfield, 578 So.2d 1209, (La.App. 4 Cir.1991), this court noted that by virtue of La. R.S. 13:1138(A)(1), the Domestic Relations Section of Civil District Court has exclusive jurisdiction over cases involving support of children; however, the question raised did not concern whether another non domestic section of Civil District Court could exercise jurisdiction, as such the statement may be dicta.
Respondent contends simply that La. R.S. 13:1138 does not address the issue of judges who are in the middle of conducting trials on the merits. We agree. Judge King commenced hearing a contested custody rule, spent 2 days listening to one witness and then recessed the case. By the time he got back to hearing the matter, he had rotated out of the domestic section of Civil District Court.
We find that the order of Judge King retaining jurisdiction of the case is too broad in light of Section 3 of Rule 6 of the Civil District Court rules and LSA-R.S. 13:1138. However, in the interest of judicial economy, Judge King should hear the remainder of the custody rule he began 18 April 2001. Once that hearing has been completed (and any motion for new trial that might arise from that ruling on that custody decision), the remainder of the case must be transferred back to the domestic relations section of the court to which it properly belongs.
| ¿TIMELINESS
Respondent contends the current application is untimely. Respondent contends the application should have been filed within thirty days of the court’s initial order pursuant to Rule 4-3 of the Uniform Rules of the Courts of Appeal. The initial order was rendered on 10 May 2001. Relator’s motion to recall improperly issued order was filed on 6 July 2001. This application was filed on 10 September 2001, the same day the trial court denied relator’s motion.
Relator contends (without elaboration) that until the court denied the “Motion to Recall Improperly Issued Order” there was no justiciable issue. Relator does not suggest how the case became more “justi-ciable” after the motion was denied than it was before. However, as the order was rendered ex proprio motu, it would have been inappropriate to seek review without first allowing the trial court to consider the basis for challenging the legality of the *64 order. From that perspective this application could be considered timely.
Accordingly, the application for supervisory writ is granted. The trial court is to complete the rule on the custody matter. Once the judgment has become final, the entire record is to be transferred to the appropriate domestic relations division.
WRIT GRANTED IN PART AND DENIED IN'PART.

. The 20 June 2001 trial date was continued until 10 September 2001.

. Judge Piper Griffin was sworn in on 14 May 2001. The majority of Judge King’s cases were allotted to Judge Griffin. (Because a new domestic relations section was added some of Judge King’s cases were allotted to the new section.)